# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

DAVID MORGAN, et al., :
:
    Plaintiffs, :
:
v. : CIVIL ACTION NO.
: 2:18-CV-28-RWS
DICK'S SPORTING GOODS, :
INC., et al., :
:
    Defendants. :

## **ORDER**

This action comes before the Court on Defendant PSE's Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim [21]. After reviewing the record, the Court enters the following Order.

## **Background**[1]

### **I. Factual Background**

This is a product liability action in which Plaintiffs seek to hold Defendant Dick's Sporting Goods ("Dick's") and Defendant Precision Shooting Equipment, Inc., d/b/a PSE Archery ("PSE"), responsible for injuries

---

[1] As the case is before the Court on a Motion to Dismiss, the Court accepts as true the facts alleged in the complaint. Cooper v. Pate, 378 U.S. 546, 546 (1964).

their son JM, a minor, sustained in an accident on March 9, 2016, while he was shooting arrows with a bow. JM and his parents purchased the bow and arrows the previous day from a Dick's retail location in Gainesville, Georgia. A store salesperson assisted the Morgans in their purchase by recommending the Bear Archery Apprentice III Compound Bow, fitting the bow to JM, and suggesting PSE Archery Explorer 28" fiberglass arrows, manufactured by Defendant PSE.[2]

When JM first used his new bow and arrows on March 9, 2016, he shot two brand-new arrows straight out of the package. The first arrow fired without incident. The second, exploded, splintering into pieces in the middle of the shaft. Some splintered fiberglass pieces went into JM's left hand and thumb, requiring immediate removal surgery. Unfortunately, the Doctor was unable to remove all shards of fiberglass. As a result, JM returns periodically for removal procedures as shards work their way up to the top of his skin. The injury has directly impacted JM's quality of life through the continued pain,

---

[2] Plaintiffs bring suit against PSE because their logo was on the arrow packaging. Plaintiffs lead with the understanding that PSE is the manufacturer and argue in the alternative they are at least a retailer. While PSE does not affirm its status as the manufacture, it also does not expressly deny it and makes arguments from the perspective of the manufacturer in its Motion to Dismiss [21-1]. Thus, the Court will proceed under the understanding that PSE manufactured the arrows unless or until otherwise advised by the parties.

procedures, and diminished use of his thumb on his dominant hand.

Plaintiffs maintain they and JM exercised due care at the time of the injury and that the arrows appeared in new condition. They claim the exploding arrow was Defendants' fault and advance a series of apparently alternative reasons the arrow could have exploded.

*The Manufacturing Defect Theory*

One explanation for the exploding arrow is a manufacturing defect. Plaintiffs argue the arrow contained a flaw or defect when it left PSE's control. (Am. Compl., Dkt [15] ¶61.) As evidence for this theory, Plaintiffs point to JM's ability to shoot one arrow without issue, while the second, defective, arrow exploded. (Id. ¶62.) Because both arrows were manufactured together, Plaintiffs argue, it follows that the second arrow deviated from the prototypical product. (Id.) Further, Plaintiffs allege PSE did not adequately communicate a warning to inspect arrows for defects prior to use because the only warning was in "extremely small lettering on the shaft of the arrows," stating: "Warning! Inspect arrow for damage before each shot." (Id. ¶51.)

*The Damaged Arrow Theory*

Another explanation for the exploding arrow is that it left PSE's control

3

in good condition but was damaged before Plaintiffs' purchase. Specifically, Plaintiffs allege Defendant Dick's created "a mechanism for damage" by displaying "the arrows for sale in such a manner that they stuck out in the isle [sic] of the store." (Id. ¶36.) By sticking out, Plaintiffs argue, the arrows could have been damaged by customers bumping into them, hitting the shelves, or being knocked to the floor. (Id.) Plaintiffs also attribute liability under this theory to Defendant PSE for: 1) failing to instruct Dick's in the proper storage and display of the arrows (Id. ¶38.); 2) failing to warn "that product failure could happen if there was damage to the arrow" (Id. ¶52.); 3) failing to communicate "what damage was acceptable for continued use and what damage was not acceptable" (Id.); 4) failing to warn "that unseen damages or defects could result in failure." (Id.)

### *The Incompatibility Theory*

Finally, Plaintiffs allege that the arrow exploded because fiberglass arrows are not compatible with the compound bow used. (Id. ¶44.) According to Plaintiffs, the PSE arrows and packaging did not warn against using fiberglass arrows with compound bows. (Id.) Further, PSE did not provide Plaintiffs with any individual warning, written or verbal. (Id. ¶48.) Neither did

4

Dick's. (Id.) Plaintiffs maintain that had PSE provided such warning, they would have heeded it and not used the fiberglass arrows with the compound bow. (Id. ¶49.) That said, the compound bow did warn against use with fiberglass arrows.[3] The arrow packaging also stated the arrows are of "durable fiberglass construction." (Id. ¶45.)

## I. Procedural Background

Plaintiffs first filed a complaint on February 6, 2018 in the Superior Court of Hall County. Subsequently, Defendant Dick's properly removed to this Court on March 8, 2018 with Defendant PSE's consent. On April 6, 2018 Defendant PSE filed a Motion to Dismiss [11]. Plaintiffs properly filed an Amended Complaint [15], mooting PSE's motion [11] and any responsive pleading [16]. (See Order [27].) PSE then filed this Motion to Dismiss Plaintiffs' Amended Complaint [21]. Defendant Dick's filed an Answer [23] to

---

[3] Defendant PSE provides a copy of this warning in its Motion to Dismiss [21]. (PSE's MTD, Dkt. [21-2] Ex. A at 4.) Plaintiffs do not question the contents of the warning. (Pls.' Response, Dkt [22] at 10.) Therefore, the Court may consider the warning at the motion to dismiss phase without converting the motion into a motion for summary judgment. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.).

5

Plaintiffs' Amended Complaint [15] along with cross claims against Defendant PSE.

As an initial matter, the Court notes that Defendant Dick's has not moved to dismiss any claims against it, and Defendant PSE has not moved to dismiss Dick's cross claims. Thus, this Order is limited to PSE's Motion to Dismiss [21] Plaintiffs' Negligence (Count I), Failure to Warn (Count II), Products Liability (Count III), and Breach of Implied Warranty (Count IV) claims, as they pertain to PSE. The Court now considers PSE's arguments.

## Discussion

**II. Motion to Dismiss Legal Standard**

Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at

6

570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). Nor will the Court "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**II. Analysis**

    A.    Negligence (Count I)

Plaintiffs' Count I consists of multiple theories of liability against both Defendants. While primarily lodged against Dick's, Plaintiffs do include some allegations against PSE. In sum, Plaintiffs allege PSE was negligent in its failure to warn Dick's that: 1) the arrows should be displayed to prevent damage; and 2) that youth fiberglass arrows should not be sold with compound

7

bows. (Am. Compl., Dkt [15] ¶39.) PSE was further negligent, Plaintiffs contend, for not "implementing protocol with its retailers to ensure these safety measures are implemented." (Id.) In response, PSE argues it owed no legal duty to Plaintiffs to warn or instruct Dick's regarding the product. Further, even if such duty existed, PSE claims Plaintiffs have not alleged proximate cause.

General negligence principles play a limited role under Georgia products liability law. See, e.g., Fletcher v. Water Applications Distribution Group, Inc., 773 S.E.2d 859 (Ga. Ct. App. 2015). Primarily, negligence claims serve to attach liability to non-manufacturers, such as retailers, since they are not subject to statutory strict liability. See O.C.G.A. § 51-1-11.1(b) ("For purposes of a product liability action based in whole or in part on the doctrine of strict liability in tort, a product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such."); Ellis v. Rich's, Inc., 212 S.E.2d 373, 376 (Ga. 1975) (plaintiff could not proceed in strict liability against importer, distributor or retailer of product "because none is a manufacturer"). While manufacturers are subject to common law negligence in addition to statutory liability, this cause of action is less common and is

8

typically a negligent failure to warn claim.

Under general negligence principles, a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses. Battersby v. Boyer, 526 S.E.2d 159, 162 (Ga. Ct. App. 1999) (quoting Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. 1994)). The existence of a duty to warn the *consumer*, however, is measured not so much by reasonable care, but by the products liability failure to warn test of foreseeability of use, foreseeability of danger, and foreseeability of the user's knowledge of the product. See Id.

Plaintiffs claim PSE, as the manufacturer, breached its duty of care to Plaintiffs by failing to properly instruct Dick's, as the retailer, about the product. The Court is not convinced that this a cognizable claim under Georgia law. Neither party nor the Court has found authority discussing a claim brought by a consumer against a manufacturer for failing to warn a *retailer*. The Court is skeptical that they even have standing to bring such a claim. This doubt is bolstered by PSE's proximate cause argument. That said, at this stage of the litigation, Plaintiffs have pled proximate cause, along with the other

9

elements necessary for a general negligence claim. Thus, absent authority to support either party's position, this claim may move forward and the parties may develop evidence on the issue to help instruct the Court. Therefore, Defendant PSE's Motion to Dismiss [21-1] Count I is **DENIED**.

### B. Failure to Warn (Count II)

"Under Georgia law, a manufacturer has a duty to warn of nonobvious foreseeable dangers from normal use of its product." Thornton v. E.I. Du Pont De Nemours Co., Inc., 22 F.3d 284, 289 (11th Cir. 1994) (citing Stovall & Co. v. Tate, 184 S.E.2d 834, 837 (Ga. Ct. App. 1971)). A manufacturer is subject to liability for failing to warn of a defect or a dangerous condition associated with a product if the manufacturer: (a) knows or has reason to know that the product is, or is likely to be, dangerous for the use for which it is supplied; (b) has no reason to believe that those for whose use the product is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform those to whom the product is supplied of its defect or dangerous condition, or of the facts that make it likely to be dangerous. Moore v. Positive Safety Mfg., Co., No. 4:96-CV-0352-HLM, 1998 WL 35178048, at *5 (N.D.

Ga. May 26, 1998). Where a duty to warn arises, it may be breached by (1) failing to adequately communicate the warning to the ultimate user or (2) failing to provide an adequate warning of the product's potential risk. Thornton, 22 F.3d at 289. While somewhat unclear, it appears Plaintiffs bring negligent failure to warn claims under both the incompatibility and damaged arrow theories. The Court will address each in turn.

### 1. *Failure to Warn under the Incompatibility Theory*

Plaintiffs appear to assert that the possibility of serious injury when PSE fiberglass arrows are used with the compound bow at issue is a "nonobvious foreseeable danger[] from normal use of [the] product." Id. Plaintiffs argue that PSE knew Bear Archery did not recommend fiberglass arrows for use in the compound bow, and that Plaintiffs did not know of such danger. (Am. Compl., Dkt [15] ¶¶44, 53.) Finally, Plaintiffs allege PSE failed to exercise reasonable care to inform users about this danger because "the packaging of the arrows did not contain any warning regarding the use of fiberglass arrows with compound bows," and the arrows themselves did not "contain any warning regarding the use of fiberglass arrows with compound bows." (Id. ¶47.) Thus,

it appears Plaintiffs fall under the second type of breach of the duty to warn by failing to provide an adequate warning of the product's potential risk. Thornton, 22 F.3d at 289.

PSE argues this claim should be dismissed because Plaintiffs cannot prove proximate cause due to their failure to read the printed warning on the compound bow's packaging. It is true that "failure to read instructions or printed warnings will prevent a plaintiff from recovering on a claim grounded on failure to provide adequate warning of the product's potential risk" Wilson Foods Corp. v. Turner, 460 S.E.2d 532, 534 (Ga. Ct. App. 1995). That said, Wilson, and every other case cited by PSE for this proposition in it's Motion to Dismiss [21-1 at 16], concerned printed warnings on the allegedly defective product, not a companion product as is the case here. PSE does not argue the arrows contained a warning about use with a compound bow, instead, PSE attempts to piggy-back off of the warnings on a completely separate product's packaging. Unfortunately for PSE, it was the arrow, not the bow, that splintered and allegedly caused JM's injury.

All the same, if Plaintiffs were subjectively aware of the incompatibility

danger, PSE would not have the duty to warn. See Bodymasters Sports Industries, Inc. v. Wimberley, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998); see also Federal Ins. Co. v. Farmer's Supply Store, Inc., 555 S.E.2d 238, 240 (Ga. Ct. App. 2001) (approving grant of summary judgment, in part, because of user's "actual knowledge" of product characteristic that caused house fire); Vickery v. Waste Management of Ga., Inc., 549 S.E.2d 482, 484 (Ga. Ct. App. 2001) (no warning necessary because purchaser actually knew that product lacked safety device). That, however, is an evidentiary matter for a later stage of litigation. For now, Plaintiffs' allege that had they "been provided a warning not to use fiberglass arrows with compound bows, they would not have used the arrows in question with the bow in question and the injury at issue would not have occurred." (Am. Compl., Dkt [15] ¶¶49.) Plaintiffs have thus pled proximate cause and have met their Twombly burden on this theory of liability against PSE.

### 2. *Failure to Warn under the Damaged Arrow Theory*

Under Count II, Plaintiffs also reference PSE's failure to inform "buyers that damaged or defective arrows could fail during use and result in injury to

13

the user." (Am. Compl., Dkt [15] ¶¶44, 53.) PSE argues this failure to warn claim should be dismissed because of the "obvious nature of the danger inherent in the product at issue." (PSE's MTD, Dkt. [21-1] at 16.)

Under Georgia law, "[a] manufacturer is under no duty to warn of a product-connected danger which is obvious or generally known." Weatherby v. Honda Motor Co., Ltd., 393 S.E.2d 64, 68 (Ga. Ct. App. 1990) (overruled on other grounds by, Ogletree v. Navistar Intern. Transp. Corp., 500 S.E.2d 570 (Ga. 1998)) ("A manufacturer is under no duty to warn of a product-connected danger which is obvious or generally known."). Whether a danger is open and obvious is determined from an objective, not subjective, point of view. Id. Thus, the Plaintiffs' actual knowledge of the danger is not necessary to invoke the open and obvious rule. Id. This is because, warning of an obvious or known risk will generally not provide an effective additional measure of safety and places too high a burden on the manufacturer. See Daniels v. Bucyrus-Erie Corp., 516 S.E.2d 848, 850 (Ga. Ct. App. 1999) ("The warnings proposed by [plaintiffs'] experts would have provided the crane operator with no unknown information.").

While arrows are a product that can cause injury, the type of harm allegedly sustained by JM is outside of the scope of the type generally contemplated. JM does not allege he was shot by the arrow. Instead, this case is about a new arrow exploding; which is not an open and obvious danger connected with its use. Thus, absent evidence and authority to the contrary, the Court cannot say at this time that this is a patent danger that did not require a warning as a matter of law. See Weatherby v. Honda Motor Co., Ltd., 393 S.E.2d at 67-68 ("[I]n many cases the defense based upon the obvious and common nature of the peril will be a question to be determined by the jury."). Accordingly, Defendant PSE's Motion to Dismiss Count II is **DENIED**.

### C. Products Liability (Count III)

To establish a strict products liability claim, Plaintiffs must demonstrate that PSE's product was "not merchantable and reasonably suited to the use intended, and its condition when sold [was] the proximate cause of the injury sustained." O.C.G.A. § 51–1–11. The product can be "not merchantable" due to one of three types of product defects: manufacturing defects, design defects, and marketing/packaging defects. See Banks v. ICI Americas, Inc., 450 S.E.2d

AO 72A
(Rev.8/82)

671 (Ga. 1994). Plaintiffs appear to allege that PSE's arrow contained a manufacturing defect. (Am. Compl., Dkt. [15] ¶ 62).

A manufacturing defect is "measurable against a built-in objective standard or norm of proper manufacture." Banks, 450 S.E.2d at 673 n. 2. In manufacturing defect cases, "it is assumed that the design of the product is safe and had the product been manufactured in accordance with the design it would have been safe for consumer use." Id. at 673. "Thus, by definition, a manufacturing defect will always be identifiable as a deviation from some objective standard or a departure from the manufacturer's specifications established for the creation of the product." Jones v. Amazing Products, Inc., 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002). Further, to satisfy the elements of a manufacturing defect claim at the motion to dismiss stage, Plaintiffs need only allege such a deviation and that the deviation was the proximate cause of the injury. See Id.

Plaintiffs allege that JM shot two arrows; the first firing without issue while the second unexpectedly shattered causing injury to his hand. Applying those facts to Count III, Plaintiffs essentially argue the objective standard is the

AO 72A
(Rev.8/82)

arrow that shot correctly. (Am. Compl., Dkt. [15] ¶ 62). Thus, because the second arrow did not follow the objective standard when it exploded, there was a deviation. (Id.) Such deviation or defect, Plaintiffs continue, existed when sold because the arrow was new, and thus, the manufacturing defect was the proximate cause of JM's injury. (Id. ¶¶ 64-65.) Consequently, Plaintiffs have adequately pled all elements of a manufacturing defect claim, and PSE's Motion to Dismiss [21-1] Court III is **DENIED**.

### D. Breach of Implied Warranty (Count IV)

It is settled Georgia law that manufacturers may not be subject to *implied* warranty liability because of the lack of privity between the manufacturer and the ultimate product purchaser. See, e.g., Bodymasters Sports Industries, Inc. v. Wimberley, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998). Despite Plaintiffs' arguments, there are no exceptions to this rule. See Lee v. Mylan Inc., 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011). Further, "if a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on [a] *express* warranty, if any, arising out of the prior sale by the defendant to the original purchaser, such as distributor or retailer from whom plaintiff

17

purchased the product." Evershine Products, Inc. v. Schmitt, 202 S.E.2d 228, 231 (Ga. Ct. App. 1973) (emphasis added). There is an exception to this rule when a manufacturer extends an *express* warranty to the ultimate consumer, even though the product is purchased through an intermediate seller. Jones v. Cranman's Sporting Goods, 237 S.E.2d 402, 405 (Ga. Ct. App. 1977).

Plaintiffs' Court IV is for a breach of *implied* warranty against PSE which is an impermissible claim and is therefore **DISMISSED**. In short, Plaintiffs argue an exception to a claim they have not pled but incorrectly bring in response briefing.[4] (Pls.' Response, Dkt. [22-1] at 14-15.) Plaintiffs are granted leave to amend their Amended Complaint [15] if they wish to assert a claim for breach of *express* warranty against PSE.

## Conclusion

For the foregoing reasons, Defendant PSE's Motion to Dismiss Plaintiffs' Amended Complaint [21-1] is **DENIED** as to Count I; **DENIED** as to Count II; **DENIED** as to Count III, and **GRANTED with prejudice** as to

---

[4] "A plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." In re Androgel Antitrust Litig. (No. II), 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010) (quoting Kuhn v. Thompson, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004)).

claims against PSE in Count IV.  Plaintiffs have **fourteen days** from the date of entry of this Order to file an amended complaint, should they so choose.  If so, Defendants must then file an answer or a motion to dismiss within **twenty-one days** thereafter.  If Plaintiffs elect not to file a timely amended complaint, the stay will be lifted and the parties shall proceed with discovery pursuant to the Court's March 23, 2018 Order [17].

    **SO ORDERED**, this 13th day of February, 2019.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)